# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| B. BRAD AND MONICA MASON TIC, DIANA K. HAMILTON and JOHN F. CARDARELLI, <br><br> Plaintiffs, <br><br> vs. <br><br> JONATHAN M. LARMORE, MICHELLE A. LARMORE, MARSHA M. LARMORE, BLAINE D. RICE, ANDREA THOMPSON, KEVIN L. GULBRANSON, ROBERT F. CROOK, ARCITERRA STRATEGIC INCOME CORPORATION – BELLEVILLE CROSSING IL, and ARCITERRA COMPANIES LLC, <br><br> Defendants. | CASE NO. _____ |

## SHAREHOLDER DERIVATIVE COMPLAINT FOR DAMAGES AND JURY TRIAL DEMAND

B. Brad and Monica Mason TIC, Diana K. Hamilton and John F. Cardarelli ("Plaintiffs") as shareholders of Arciterra Strategic Income Corporation-Belleville Crossing IL (the "Company") by their attorneys, Maddox Hargett & Caruso, P.C., respectfully submit their Shareholder Derivative Complaint for Damages and state as follows:

## THE PARTIES

1. Plaintiff B. Brad and Monica Mason TIC is a Texas based real estate investment entity and owns 15,000 shares of the Company.

2. Plaintiff Diana K. Hamilton is an Indiana resident and owns 54,000 shares of the Company.

3. Plaintiff John F. Cardarelli is a Massachusetts resident and owns 6,000 shares of the Company.

4. Defendant Jonathan M. Larmore is an Arizona resident, the Chief Executive Officer, Director and Assistant Secretary of the Company, and Manager and Principal of Defendant Arciterra Companies, LLC ("Arciterra").

5. Defendant Michelle A. Larmore is an Arizona resident, a member of Arciterra, and is the wife of Jonathan Larmore.

6. Defendant Marsha M. Larmore is an Indiana resident, Secretary of the Company, and Senior Vice President and Principal of Defendant Arciterra Companies, LLC. Marsha Larmore is the mother of Jonathan Larmore.

7. Defendant Blaine D. Rice is an Arizona resident, formerly the Chief Operating Officer and General Counsel for Defendant Arciterra Companies, LLC, and provided similar services to the Company.

8. Defendant Andrea Thompson is an Arizona resident, the Director of Investor Relations for Defendant Arciterra Companies, LLC, and provides similar services to the Company.

9. Defendant Kevin L. Gulbranson is an Arizona resident, formerly the Controller for Defendant Arciterra Companies, LLC, and provided similar services to the Company.

10. Defendant Robert F. Crook is a New Jersey resident, CFO for the Defendant Arciterra Companies, LLC, and provides similar services to the Company.

11. Defendant Arciterra Companies, LLC ("Arciterra") is an Arizona Limited Liability Company with its principal place of business in Phoenix, Arizona.

12. Defendant Arciterra Strategic Income Corporation-Belleville Crossing IL ("Company") is a Maryland corporation with its principal place of business in Phoenix, Arizona.

## JURISDICTION

13. This Court has jurisdiction under 28 U.S.C. 1332 through diversity of citizenship, as all Plaintiffs and Defendants reside in different states, and the amount in controversy exceeds $75,000, excluding interest and costs.

## DERIVATIVE ACTIONS BY SHAREHOLDERS

14. The Plaintiffs are bringing this claim pursuant to 28 U.S.C. App Fed R Civ P Rule 23.1 as a shareholder derivative action.

15. Plaintiffs allege that they were shareholders of the Company at the time of the transactions discussed in this Complaint, and this action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

16. Pursuant to Rule 23.1, Plaintiffs have made no demands to the Board of Directors of the Company because such efforts would be "futile."

17. Plaintiffs' efforts to make a demand of the Board would be futile because the Company's directors had a personal interest in the transactions that are the subject of this claim, and a majority of the Board are controlled by Defendant Jonathan M. Larmore, also a Board Member and the primary wrongdoer in this Complaint. Any remaining Board Members, if any, are not "disinterested" Board Members and subject to the control of Jonathan Larmore.

## FACTS COMMON TO ALL COUNTS

18. The Company was formed on June 4, 2011 as a Corporation under the name "Arciterra Strategic Income Corporation-Belleville Crossing IL" in accordance with the laws of the State of Maryland to acquire, operate and hold for lease Belleville Crossing, a multi-tenant retail shopping center located in Belleville, Illinois (the "Property"), in the Southern District of Illinois.

19. From late 2010 through mid-2012, the Company sold common stock to approximately 177 investors raising just under $5 million through a Private Placement Offering.

20. The Company qualified as a Real Estate Investment Trust ("REIT") and is subject to state and federal laws governing REITs.

21. The Company is managed directly by and through various entities controlled by Jonathan Larmore and the other Defendants.

22. According to its website, Arciterra has created 19 investment offerings, raising approximately $187,000,000 in capital from outside investors and owns approximately 83 properties in 24 states.

23. The structure and management of the Company is similar to the approximately 82 other commercial properties owned and managed by the Defendants.

24. Through all of their positions as Officers and Directors of the Company, Arciterra and related entities, the Defendants owed fiduciary duties to the Company, Plaintiffs and all shareholders of the Company. This fiduciary duty by the Defendants is acknowledged in the Confidential Private Offering Memorandum given to Plaintiffs and other shareholders when they invested in the Company.

25. The Defendants have a fiduciary duty to maintain the properties for the benefit of their shareholders.

26. Over the past 5 years, the Defendants have breached their duties to properly maintain the Property, in order to transfer some of the Property's cash to Jonathan and Michelle Larmore to maintain their exorbitant family expenses.

27. Neither the Plaintiffs nor any other investor in the Company has received dividend payments since August 8, 2019. During the time since August 8, 2019, the Defendants Jonathan

and Michelle Larmore and Marsha Larmore have been diverting Company assets to fund their unbelievably lavish lifestyle including owning approximately twelve (12) personal residences throughout the United States, two of which have been completely remodeled since 2019 at tremendous expense and four are on the same exclusive lake in Indiana. In addition to a Cessna Citation jet, they purchased a second personal jet airplane, a Gulfstream GIV, in 2019 and subsequently upgraded to a G400 in 2021 at a cost of nearly $8 million. They purchased a $250,000 wake surf boat and then hired a private helicopter and pilot to fly behind it so kids could jump with surf boards from the helicopter onto the boat's wake. They regularly charter luxury yachts in exotic locations. They have purchased numerous boats, cars and luxury toys. They frequently throw lavish parties costing six figures. In the summer of 2022, they threw such a six-figure party, flying in friends and family on their private aircraft. One such party was to celebrate the birthday of their Boston Terrier, Spike.

28. Defendants have diverted the Company's cash into other investment assets owned by the Defendants. For example, while the Belleville Property has suffered from the Defendant's breach of duties, other assets owned exclusively by the Larmore family have flourished. One such asset is Fishermen's Village resort and marina in Punta Gorda, FL. This property received tens of millions of dollars for improvements including remodeling nearly 50 condominium units, refacing the buildings and building a man-made beach in the time since 2019. Jonathan Larmore was quoted in the Charlotte Sun newspaper in December 2022 stating that his Fishermen's Village property brought in $47 million in revenue that year.

29. While diverting the Company's cash to the Larmore's exorbitant personal needs and personal investments, the Defendants have failed to pay out REIT profits to its shareholders as required by their fiduciary duties and applicable state and federal securities and tax laws.

30. Even though the Belleville Property's tenants pay for Common Area Maintenance ("CAM"), as part of their monthly rental payments, that money was diverted to Larmore family expenses.

31. As a result of Defendants' diversion of company assets, necessary Company vendors were not paid, the Property has fallen into a state of disrepair and tenants complain of three-foot-tall weeds in planting beds, over-flowing and accumulating trash throughout the property, roof leaks not being addressed allowing ongoing water penetration damage as well as the complete absence of snow and ice removal. One tenant remarked that a man asked her if the center is in receivership due to the condition of the property. The Defendants now find it nearly impossible to find vendors to provide necessary services to the Property because of its history of non-payment.

32. The CAM that Belleville Property tenants pay includes water utility service. As a result of the Defendants diverting the Company's cash, the water utility service was disconnected for a period of time in September 2022.

33. Even though the Belleville Property's tenants pay for property insurance as part of their monthly rental payments, that money was diverted to Larmore family expenses.

34. As result of Defendant's diversion of the Company's cash, property and casualty insurance coverage of the Belleville Property was terminated for a period of time in November 2022.

35. The Defendants have not performed their duties to make reasonable and timely efforts to renew tenants' leases or sign new leases. Months, and in some cases, years have passed while the Belleville Property tenants have waited on the Defendants to execute simple lease renewals. During the time since 2019, the Defendants neglected to reasonably pursue a multitude

of potential new tenants who sought to occupy the Property, including such desirable tenants as Five Below, Popshelf, Charter Communications, O'Reilly Auto Parts, Mercy Health, and Old Navy.

36. The Company's Belleville Crossing shopping center was recently sold in a tax lien sale in November 2022 due to Defendants' failure to timely pay property taxes.

37. Just weeks after the tax lien sale, in December 2022, Jonathan and Michelle Larmore purchased an 87-foot Cheoy Lee motor yacht at a cost of approximately $2.5 million.

38. The Plaintiffs allege that the Defendant's diversion of assets and negligence as a fiduciary is not limited to the Company and the Belleville Property, rather, the Belleville Property is part of a more global fraudulent scheme perpetrated by the Defendants to defraud not hundreds, but thousands of investors who contributed to the various Arciterra investment offerings. The Plaintiffs further allege that none of the more than 2,000 plus investors in the Defendants' various offerings have received dividend payments since 2019 and that some have not received payments dating as far back as 2011.

39. Plaintiffs allege that, in addition to the approximately 177 investors in the Belleville Property, the Defendants' fraudulent scheme has defrauded approximately 504 investors in Arciterra REIT, Inc., approximately 465 investors in Arciterra Note Fund II, LLC, approximately 568 investors in Arciterra Note Fund III, LLC, approximately 187 investors in ArciTerra National REIT, Inc., approximately 119 investors in Arciterra Strategic Retail Wheatland IL, LLC, approximately 115 investors in Arciterra Strategic Retail Plaza OK, LLC, approximately 85 investors in Arciterra Strategic Retail Briargate & Linden, LLC. It was the Defendants' custom, practice and pattern of conduct to treat all of their shareholders in various commercial properties as they treated the shareholders of the Company.

40. Plaintiffs allege that many of the investors in the Defendants' various offerings, including the Company, particularly those that invested in the Defendant's initial offerings which date back to 2006, are now elderly or are deceased.

41. Plaintiffs allege that it is part of the Defendants' overall scheme to "wait out" investors until they succumb to death or attrition, simply giving up on any hopes of recovering their investments and allowing the Defendants to simply keep as their own the nearly $200,000,000 raised from their unsuspecting investors.

42. Plaintiffs allege that the Defendants' scheme to defraud investors was by design and that as unregistered securities offerings, almost no one except the Defendants would have knowledge of who the actual investors were. As a result, it would be nearly impossible for investors to identify each other and unify in an attempt to recover their investments. In addition, not even the Securities and Exchange Commission would be aware of the identity of investors, thereby allowing the Defendants to perpetrate their immense fraud behind closed doors.

## FIRST CAUSE OF ACTION

### Defendants' Negligence is a cause of Plaintiffs' Damages

43. Defendants have negligently maintained the common areas of the Property.

44. Defendants have negligently handled new leases and lease renewals.

45. Defendants negligently failed to pay property taxes, and its tax lien was sold in November 2022.

46. Defendants have failed to timely pay vendors and insurance carriers.

47. Defendants have failed to conduct an Annual Meeting of Stockholders since 2017.

48. Defendants have committed all of the negligent acts mentioned in the common facts above.

49. All of the referenced acts of negligence caused the Company's losses, have prevented dividends to be paid to shareholders, and decreased the value of the shareholders' common stock.

## SECOND CAUSE OF ACTION

### Breach of Fiduciary Duty

50. Defendants have a fiduciary duty to the Company, Plaintiffs and all shareholders pursuant to their positions as Officers and Directors of the Company and Arciterra. For all the reasons stated above in the Common Facts, Defendants have breached their fiduciary duties to the Company and its shareholders.

51. All of the referenced breaches of fiduciary duties caused the Company's losses, have prevented dividends to be paid to shareholders, and decreased the value of the shareholders' common stock.

## THIRD CAUSE OF ACTION

### Conversion

52. In order to bankroll an unbelievably lavish lifestyle, the Defendants have improperly converted funds from the Company to the Larmores as alleged in the above Common Facts.

53. Defendants' conversion has caused significant damages to the Company and its shareholders, have prevented dividends to be paid to shareholders, and decreased the value of the shareholders' common stock.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for a judgment against Defendants in an amount anticipated to be over $2 million, pre-judgment interest at the statutory rate, for their attorneys' fees and for all further just and appropriate relief in the premises.

## JURY TRIAL DEMAND

Comes now Plaintiffs B. Brad and Monica Mason TIC, Diana K. Hamilton and John F. Cardarelli, by counsel Maddox Hargett & Caruso, P.C. and hereby demand a trial by jury on Plaintiffs' Complaint.

Respectfully submitted,

_____
Mark E. Maddox (11252-49)
MADDOX HARGETT & CARUSO, P.C.
10150 Lantern Road
Suite 175
Fishers, IN 46037
Telephone: (317) 598-2040
Email: mmaddox@mhclaw.com

Attorney for Plaintiffs

## VERIFICATION

I, B. Brad Mason, declare:

I am a plaintiff in this action. I am also a shareholder of Arciterra Strategic Income Corporation-Belleville Crossing IL and have been during the relevant time period. I certify under the penalty of perjury that I have read and reviewed the Shareholder Derivative Complaint for Damages and authorized its filing. Based upon my and my counsel's investigation, the contents of the Shareholder Derivative Complaint for Damages are true to the best of my knowledge, information and belief.

Dated: May 15, 2023

By: _____
B. Brad Mason

## VERIFICATION

I, Diana K. Hamilton, declare:

I am a plaintiff in this action. I am also a shareholder of Arciterra Strategic Income Corporation-Belleville Crossing IL and have been during the relevant time period. I certify under the penalty of perjury that I have read and reviewed the Shareholder Derivative Complaint for Damages and authorized its filing. Based upon my and my counsel's investigation, the contents of the Shareholder Derivative Complaint for Damages are true to the best of my knowledge, information and belief.

Dated: May 11, 2023

By: *Diana K. Hamilton*
Diana K. Hamilton

## VERIFICATION

I, John Cardarell, declare:

I am a plaintiff in this action. I am also a shareholder of Arciterra Strategic Income Corporation-Belleville Crossing IL and have been during the relevant time period. I certify under the penalty of perjury that I have read and reviewed the Shareholder Derivative Complaint for Damages and authorized its filing. Based upon my and my counsel's investigation, the contents of the Shareholder Derivative Complaint for Damages are true to the best of my knowledge, information and belief.

Dated: May 23, 2023

By: _____
  (plaintiff's name)

11